T.C. Memo. 1999-97

UNITED STATES TAX COURT

TERRY U. NEAL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23065-97.                    Filed March 29, 1999.

Terry U. Neal, pro se.

<u>Robert S. Bloink</u>, for respondent.


MEMORANDUM OPINION

COUVILLION, <u>Special Trial Judge</u>:  This case was heard
pursuant to section 7443A(b)(3)[1] and Rules 180, 181, and 182.

---

[1]    Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the years at issue.  All Rule
references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies of $2,199, $2,100, and $2,267 in petitioner's Federal income taxes for 1994, 1995, and 1996, respectively.

The issues for decision are:  (1) Whether petitioner is entitled to dependency exemptions for 1994, 1995, and 1996 for his daughter, Amanda Elder, and for his sons, Adam Elder and Nathan Neal; (2) whether petitioner is entitled to itemized deductions for 1994 in excess of an amount allowed by respondent; and (3) whether petitioner is entitled to deductions for trade or business expenses for 1994 in excess of an amount allowed by respondent.

Some of the facts were stipulated, and those facts, with the annexed exhibits, are so found and are incorporated herein by reference.  At the time the petition was filed, petitioner's legal residence was Naples, Florida.

Petitioner was previously married to Debra Lynn Mosley (Ms. Mosley).  Two children were born to the couple prior to marriage, namely, Adam Elder (Adam), born May 29, 1986, and Amanda Elder (Amanda), born April 30, 1988.  A third child was born to the couple during their marriage; namely, Nathan Neal (Nathan), born May 18, 1990.  Petitioner and Ms. Mosley were divorced on March 11, 1992, pursuant to a Decree of Dissolution (divorce decree) by a Kentucky State court, the Fayette Circuit Court (Fayette Circuit Court).  In the divorce decree, petitioner and

Ms. Mosley were granted "joint care, custody and control" of Nathan, with Ms. Mosley as the "primary custodian and the deciding parent in case of disagreement between the parties, and subject to liberal visitation with notice by" petitioner. The divorce decree made no provision for the custody of Adam and Amanda. Since the divorce, Adam, Amanda, and Nathan have resided with Ms. Mosley.

During May 1992, the Fayette Circuit Court issued an Order (dependency exemption order) stating:

> IT IS ORDERED AND ADJUDGED that the Decree of Dissolution, entered herein on March 11, 1992, is amended insofar that the Petitioner, Terry Neal, shall be entitled to claim the child of the parties, namely Nathan T. Neal, born May 18, 1990, as a dependent for all income tax purposes, including federal, state and local, since his birth year of 1990 when the Petitioner began to pay child support for said child, and for all subsequent years.

The dependency exemption order made no provision for Adam and Amanda. Moreover, the dependency exemption order contained no reference to the execution of any documents that might be necessary to enable petitioner to claim the dependency exemption for Nathan.

On his Federal income tax returns for 1994, 1995, and 1996, petitioner claimed dependency exemptions for his three children in the amounts of $7,350, $7,500, and $7,650, respectively. Further, on his 1994 return, petitioner claimed Schedule A

miscellaneous itemized deductions totaling $4,711, subject to the 2 percent of adjusted gross income limitation of section 67(a), and Schedule C trade or business expenses of $8,799. Petitioner attached to his returns Internal Revenue Service (IRS) Forms 8332, Release of Claim to Exemption for Child of Divorced or Separated Parents; however, these Forms 8332 were not signed by Ms. Mosley. Petitioner did not attach to the returns any statement executed by Ms. Mosley that would contain substantively the same information called for on Form 8332. The record contains no evidence as to whether Ms. Mosley claimed the three children as dependents on her Federal income tax returns for the years at issue.

In the notice of deficiency, respondent disallowed the dependency exemptions claimed by petitioner for the three children for all years at issue. Further, respondent disallowed $876 of the Schedule A miscellaneous itemized deductions and $2,069 of the Schedule C trade or business expenses claimed by petitioner for 1994.

The first issue is whether petitioner is entitled to dependency exemptions in 1994, 1995, and 1996 for his three children, Adam, Amanda, and Nathan. Respondent disallowed the dependency exemptions on the ground that petitioner had not established that he provided over one-half of the total support of any of the children. Respondent further contends that

petitioner was not entitled to the dependency exemptions for the reason that Ms. Mosley, as the custodial parent, had not released claim to the exemptions for the years in question, which release would be reflected on Form 8332 or any other written statement conforming thereto.

Section 151(c) allows taxpayers an annual exemption amount for each "dependent" as defined in section 152. Under section 152(a), the term "dependent" means certain individuals, such as a son or daughter, "over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under section (c) or (e) as received from the taxpayer)".

The support test in section 152(e)(1) applies if: (1) A child receives over half of his support during the calendar year from his parents; (2) the parents are divorced under a decree of divorce; and (3) such child is in the custody of one or both of his parents for more than one-half of the calendar year. If these requirements are satisfied, as in the present case, the "child shall be treated, for purposes of subsection (a), as receiving over half of his support during the calendar year from the parent having custody for the greater portion of the calendar year (* * * referred to as the custodial parent)", thus, allowing the dependency exemption to be claimed by the custodial parent. Sec. 152(e).

To decide who has custody, section 1.152-4(b), Income Tax Regs., provides that custody "will be determined by the terms of the most recent decree of divorce" if there is one in effect. Section 1.152-4(b), Income Tax Regs., further provides that, if a divorce decree or written separation agreement does not establish who has custody of a child, or in the event of so-called split custody, custody will be "deemed to be with the parent who, as between both parents, has the physical custody of the child for the greater portion of the calendar year." Since the divorce decree does not provide for the custody of Adam and Amanda, and provides split custody for Nathan, and all three children resided exclusively with Ms. Mosley during the years in question, Ms. Mosley is considered the custodial parent under section 152(e).

Petitioner, as the noncustodial parent, is allowed to claim a child as a dependent only if one of three statutory exceptions are met. Under these exceptions, the noncustodial parent is treated as providing over half of a child's support and, therefore, entitled to the dependency exemption if:

(1)(a) The custodial parent signs a written declaration that such custodial parent will not claim such child as a dependent, and

(b) the noncustodial parent attaches such written declaration to the noncustodial parent's return for the taxable year, section 152(e)(2); or

(2) a multiple support agreement pursuant to section 152(c) determines support, section 152(e)(3); or

(3)(a) a qualified pre-1985 instrument provides that the noncustodial parent shall be entitled to any deduction allowable under section 151 for such child, and

(b) the noncustodial parent provides at least $600 for the support of such child during the calendar year, section 152(e)(4).

In the present case, the exceptions in section 152(e)(3) and (4) do not apply. There was no multiple support agreement and, since petitioner's divorce decree and subsequent dependency exemption order were rendered after 1985, there was no pre-1985 instrument. Thus, petitioner is entitled to the dependency exemptions only if the requirements of section 152(e)(2) are met.

Section 152(e)(2)(A) specifically requires that the custodial parent sign "a written declaration (in such manner and form as the Secretary may by regulations prescribe) that such custodial parent will not claim such child as a dependent". Pursuant to this statutory provision, temporary regulations were promulgated that provide: "The written declaration may be made on a form to be provided by the Service for this purpose. Once the Service has released the form, any declaration made other than on the official form shall conform to the substance of such

form."  Sec. 1.152-4T(a), Q&A-3, Temporary Income Tax Regs., 49 Fed. Reg. 34459 (Aug. 31, 1984).[2]

Form 8332 is the IRS form intended to satisfy section 152(e)(2), and this form requires (1) names of the children for which exemption claims were released, (2) years for which the claims were released, (3) signature of the custodial parent, (4) Social Security number of the custodial parent, (5) date of signature, and (6) name and Social Security number of the parent claiming the exemption.  The Forms 8332 that petitioner attached to his returns for the years at issue were not signed by Ms. Mosley.  Nor did he attach to those returns any written statements that were signed by Ms. Mosley and which would, in substance, comply with the requirements of section 152(e)(2). Because petitioner attached to his returns Forms 8332 that were not signed by Ms. Mosley as required by section 152(e)(2), respondent did not accept these Forms 8332, and disallowed the dependency exemptions for each year.  Petitioner testified that he was unable to procure Ms. Mosley's signature because he had no idea of her whereabouts at the times he filed his respective returns.  The provisions of section 152(e)(2) have not been

---

[2]    The Court notes that temporary regulations have binding effect and are entitled to the same weight as final regulations. See Peterson Marital Trust v. Commissioner, 102 T.C. 790, 797 (1994), affd. 78 F.3d 795 (2d Cir. 1996); Truck & Equip. Corp. v. Commissioner, 98 T.C. 141, 149 (1992); see also LeCroy Research Sys. Corp. v. Commissioner, 751 F.2d 123, 127 (2d Cir. 1984), revg. on other grounds T.C. Memo. 1984-145.

satisfied in this case. The Court holds that none of the statutory exceptions described above applies to the present case.

Although the divorce decree, by and through the dependency exemption order, provides that petitioner is entitled to the dependency exemptions for Nathan, it is well settled that State courts, by their decisions, cannot determine issues of Federal tax law. See Commissioner v. Tower, 327 U.S. 280 (1946); Kenfield v. United States, 783 F.2d 966 (10th Cir. 1986); Nieto v. Commissioner, T.C. Memo. 1992-296. Unfortunately, regardless of what is stated in the divorce decree and dependency exemption order, the law is clear that petitioner is entitled to the child dependency exemptions in 1994, 1995, and 1996 only if he complied with the clear provisions of the Internal Revenue Code. Petitioner has failed in this regard. Thus, the Court concludes that, pursuant to section 152(e), petitioner is not entitled to claim his three children as dependents for 1994, 1995, and 1996. A partial remedy for petitioner, if any, lies in the Fayette Circuit Court for enforcement of the provisions of the divorce decree and dependency exemption order with respect to Nathan.[3]

Petitioner contends that he relied on IRS publications, which stated that it would be sufficient for petitioner to attach

---

[3] Petitioner did not indicate that he exerted any effort whatsoever to locate Ms. Mosley, nor did he indicate a belief that, if he were to locate her, she would refuse to sign the Forms 8332.

to his returns a copy of his divorce decree and dependency exemption order granting him the right to claim the child dependency exemptions.  Although the publications upon which petitioner contends he relied were not introduced into evidence, the testimony indicates that these publications required that any document attached to the return for purposes of satisfying section 152(e)(2) must contain the signature of the custodial parent.  This sort of requirement in a publication would certainly correspond to the statutory provisions of section 152(e)(2) and the regulations thereunder.  Although petitioner attached copies of the divorce decree and dependency exemption order to his returns for 1994, 1995, and 1996, these documents provide that petitioner is entitled to claim a dependency exemption for Nathan only.  Moreover, petitioner admits that he failed to attach a signature page for either of these documents, as required by the publication, containing the signature of Ms. Mosley.  Petitioner argues that the State of Kentucky does not require signatures of the parties on divorce decrees; thus, he should not be required to attach to his returns a document containing Ms. Mosley's signature.

Petitioner's argument in this regard is misplaced.  An obvious purpose of the aforementioned IRS publications is to insure that taxpayers understand the requirements for compliance with section 152(e)(2) and the corresponding regulations.

Section 152(e)(2) and the corresponding regulations require, unequivocally, that the signature of the custodial parent be attached to the return of a noncustodial parent claiming a dependency exemption, regardless of the form or nature of the documentation attached to the return. It appears from the record that petitioner failed to comply fully with the instructions in the aforementioned IRS publications. Thus, not only did petitioner fail to satisfy the statutory requirements of section 152(e)(2), but also he failed to satisfy the requirements of the IRS publications upon which he contends he relied.

Finally, petitioner contends that he should be allowed to claim the dependency exemptions because he provided over half of the three children's support in 1994, 1995, and 1996. Petitioner failed to produce any evidence to show that he provided over half of the support for any of his three children in 1994, 1995, and 1996. Petitioner acknowledged that Ms. Mosley and the children were receiving some measure of financial assistance from Aid to Families with Dependent Children (AFDC); however, he did not produce evidence of the amount of support provided by AFDC. Additionally, petitioner failed to produce evidence of either the total amount of support he provided for any of the three children during the years at issue, or the total amount of support provided for any of the three children from all sources during the years at issue.

Petitioner introduced a Judgment of the Fayette District Court (paternity judgment), rendered on June 6, 1991, in connection with a paternity action brought by the Commonwealth of Kentucky on behalf of Ms. Mosley, Adam, and Amanda requiring petitioner to pay $100 per week for the support of Adam and Amanda. The paternity judgment also required petitioner to obtain and maintain medical and dental insurance covering Adam and Amanda and to pay one-half of any expenses not covered by such insurance. Additionally, the divorce decree provided that petitioner pay Ms. Mosley $105 per week for the support of Nathan. However, when questioned by the Court as to how much total support he provided for the children, petitioner replied: "I don't have that."

In Blanco v. Commissioner, 56 T.C. 512, 514-515 (1971), this Court held that, in establishing that more than one-half of a dependent's support has been provided, a prerequisite to such a showing is the demonstration by competent evidence of the total amount of the dependent's support from all sources for that year. If the amount of total support is not established and cannot be reasonably inferred from competent evidence available to the Court, it is not possible to conclude that the taxpayer claiming the exemption provided more than one-half of the support of the claimed dependent.

On this record, the Court holds that petitioner is not entitled to dependency exemptions for Adam, Amanda, and Nathan for 1994, 1995, or 1996. Consequently, respondent is sustained on this issue.

The second issue is whether petitioner is entitled to itemized deductions for 1994 in excess of that allowed by respondent. On Schedule A, Itemized Deductions, of his 1994 return, petitioner claimed miscellaneous itemized deductions subject to the 2-percent-of-adjusted-gross-income limitation of section 67(a) for job hunting expenses totaling $4,600. These expenses consisted of $3,269 for mileage expenses (11,271 miles at 29 cents per mile), telephone expenses of $1,152 (long distance and cellular), vocational materials of $98, postage of $52, and printing of $29. Respondent disallowed a portion of these expenses, including $358 for mileage expenses, $384 for telephone expenses, $40 for vocational material expenses, and $52 for postage expenses.[4]

Petitioner presented no documentary evidence to show he actually incurred any of the aforementioned expenses disallowed by respondent. It is well established that this Court is not

---

[4] At trial, respondent conceded that, although the notice of deficiency disallowed $876 in itemized deductions, this was due to a mathematical error, and the correct amount of disallowed itemized expenses should have been $834. Thus, respondent conceded that petitioner was entitled to an additional $42 of miscellaneous itemized deductions.

required to accept self-serving testimony in the absence of corroborating evidence. See Niedringhaus v. Commissioner, 99 T.C. 202, 212 (1992); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Moreover, the Court is not convinced that petitioner incurred any job hunting expenses in excess of those allowed by respondent. Consequently, on this record, the Court holds that petitioner is not entitled to any miscellaneous itemized deductions, for 1994, in excess of those allowed by respondent.

The final issue is whether petitioner is entitled to trade or business expenses for 1994 in excess of those allowed by respondent. On Schedule C, Profit or Loss From Business, of his 1994 return, petitioner reported $5,377 for gross receipts and claimed $8,799 for total expenses in connection with a computer services activity. The expenses consisted of $907 for car and truck expenses, $14 for commissions and fees, $3,614 for depreciation, $11 for office expenses, $236 for rental of vehicles, machinery, and equipment, $375 for supplies, and $3,638 for other expenses.[5] "Other expenses" included $1,440 for telephone expenses, $250 for storage, $58 for professional journals, $450 for contract labor, $316 for software, and $1,124 for diskettes. Respondent disallowed $2,069 of these expenses,

---

[5] These figures total $8,795 rather than $8,799; however, this apparent mathematical error is not relevant to the Court's holdings herein.

consisting of $790 for car and truck expenses, $1,256 for telephone expenses, and $23 for storage expenses.

Petitioner presented no documentary evidence to show he actually incurred any of the aforementioned expenses disallowed by respondent. See <u>Niedringhaus v. Commissioner</u>, <u>supra</u>; <u>Tokarski v. Commissioner</u>, <u>supra</u>. Moreover, the Court is not convinced that petitioner incurred any trade or business expenses in excess of those allowed by respondent. Consequently, on this record, the Court holds that petitioner is not entitled to any trade or business expense deductions for 1994 in excess of those allowed by respondent. Respondent, therefore, is sustained on this issue.

<u>Decision will be entered under Rule 155.</u>